34660. PORTER *v.* RUCKER *et al.*

DECIDED JULY 1, 1953.

*Geo. W. Westmoreland,* for plaintiff in error.

*H. W. Davis, Jack S. Davidson,* contra.

SUTTON, C. J.   The question for determination is whether or not the verdict for $787.77 was authorized by the evidence. Porter (the plaintiff in error) contends that he was not an intentional trespasser on the Rucker land, and that the evidence did not warrant a verdict in the amount of $787.77.

T. M. Crow testified in behalf of the plaintiffs: that he was in the sawmill business and was asked to go down on the Rucker land to measure and figure out the timber that had been cut there; that he cruised it and figured 8,175 feet of timber had been cut, and he would have paid for that much timber if he had been buying it; and he explained in detail how he arrived at the number of feet of timber in counting the trees that had been cut. He testified that the lumber cut from that class of timber was selling at that time, in 1950, for $90 per thousand feet for the best grade and 2 by 10's were selling at $70 per thousand, and that there were a few more thousand feet of the best grade of timber cut on the tract in question than there were of the second grade; that the line between the Rucker land and the Daniel land (the Daniel land being where Porter had bought the timber) was pointed out to him, and the timber he had reference to was cut from the Rucker land.   He also testified that a good many small trees had been cut and broken down on the Rucker land in cutting the sawmill timber thereon.

C. L. Potts testified: that the Rucker land, where the timber was cut, was located between four and five hundred yards from his land, and that he was familiar with it and had known it for more than 25 years and knew where the lines were; that, soon after C. F. Porter moved his sawmill in to saw the timber on the Daniel land, he was at the sawmill, and he and Porter dis-

cussed where the line was between the Rucker land and the Daniel land; that he pointed out to Porter and showed him the line and the corners between the tracts of land; that the timber on the Rucker land had not been cut down to the line at that time; that only a few trees had been cut on the Rucker land then; but that the major part of the timber which had been cut on the Rucker land was cut after he, Potts, had pointed out the line to Porter.

Sandy Rucker, one of the plaintiffs, testified: that he lived on the Rucker land during 1950; that, when Porter moved his sawmill in there, he went down there to see him; that Porter was not there, but he told a man at the mill that Mr. Porter was getting on their land; that he went back to the mill the next day and told Porter that he was over the line and pointed out the dividing line between the Rucker land and the Daniel land to Porter and showed him the line, and asked him not to cut any more timber on the Rucker land; that he went back later on and found that Porter was cutting timber on the Rucker land, and he again asked him to stop cutting their timber; that, when he went back the last time, he found that it was all cut. He also testified that there was a good deal of the small timber chopped and torn down and left lying there on the land; and that there were a couple of roads cut through their land in hauling timber and in running tractors over their land; and he testified that he would estimate the damage to the land and small timber as about $500.

The defendant testified to the effect that he acted in good faith and thought he was cutting timber from the Daniel tract of land which he had bought, that he did not cut as much timber as the plaintiffs claimed he did; and he testified as to the value of the timber on the stump at the time he cut it. He further testified to the effect that he told Sandy Rucker that, if he had cut any timber on the Rucker land, he would pay them for it or would give them back the number of trees that he had cut, and he understood from Rucker that this would be all right, but that Rucker had got a lawyer and brought this suit instead.

Other witnesses were introduced by both parties, but it is not deemed necessary, for the purpose of a decision of this case, to set out their testimony.

The jury was authorized to find from the evidence: that the line between the Rucker land, the land of the plaintiffs, and the Daniel land, the land on which the defendant had purchased timber, was pointed out to the defendant before he cut the timber in question, and that the defendant was a wilful trespasser in cutting and removing the timber from the plaintiff's land; that there was cut and removed from the Rucker land 8,175 board feet of pine timber of the value of $90 per thousand feet for the best grade and $70 per thousand feet for the second grade; and that there were a few thousand feet more of the best grade than there were of the second grade. But counting only half of the 8,175 feet of timber, or 4,085 feet, at $90 per thousand, it would amount to $367.83, and the other half at $70 per thousand would amount to $285.95, which makes a total of $653.78 for the 8,175 board feet of timber cut into lumber from the Rucker land, which is sued for in count one; and this sum is only $134 less than the amount of the verdict. As to count two, there was evidence that a good deal of the small timber was cut and broken down on the Rucker land in cutting and removing the saw timber, and one of the plaintiffs testified that he would estimate the damage to the land and small timber was about $500.

Both counts of the petition were supported by evidence, and the amount of the verdict was well within the range of the evidence. Of course, there was a conflict in the evidence for the plaintiffs and for the defendant, both as to the amount of timber cut by the defendant on the plaintiffs' land and as to whether he was a wilful or an innocent trespasser, but the jury passed on the evidence and the conflict was resolved in favor of the plaintiffs. This case is very similar to that of *Rowland v. Gardner,* 79 *Ga. App.* 153 (53 S. E. 2d 198), which is applicable and controlling here.

The verdict was authorized by the evidence, and the court did not err in denying the defendant's motion for new trial.

*Judgment affirmed. Felton and Worrill, JJ., concur.*