18420. LEWIS *v.* LEWIS *et al.*

SUBMITTED JANUARY 11, 1954—DECIDED FEBRUARY 9, 1954.

*Frank M. Gleason, Gleason & Painter*, for plaintiff in error.
*Fariss & Fariss, Dietzen, Graham & Dietzen*, contra.

ALMAND, Justice.  Winona Williams Lewis filed her petition against John Leslie Lewis and Raymond Graham, wherein she sought to cancel a deed from Lewis to Graham to a house and lot, and to restrain Graham from instituting any proceedings to evict her from the premises.  It was alleged: On June 17, 1952, she instituted a suit in Walker Superior Court against Lewis, in which she sought a divorce and alimony for the support of herself and minor children, which case was still pending.  After said petition was filed, she learned that her husband on May 29, 1952, had executed a purported deed to the defendant Graham, an attorney at law, reciting as consideration the sum of $500 as attorney's fee, a note for $700, and the assumption of a loan against the property., At the time the deed was executed the plaintiff and her husband were living in a state of separation, and he executed said deed for the purpose of defeating her claim for alimony; Raymond Graham was a party to this scheme, and knew when he took said deed that it was the purpose of the husband to defeat, hinder, and delay the plaintiff in the collection of alimony, and the making of said deed rendered the husband insolvent.

The defendants filed a joint answer, in which they admitted the pendency of the divorce and alimony suit and the execution of the deed, but denied all allegations that the deed was executed to hinder, defeat, or delay the plaintiff's claim, but alleged that the transaction was bona fide and was based upon a valuable consideration.  On the trial, at the conclusion of the plaintiff's evidence the court granted a nonsuit.  By direct bill of exceptions the plaintiff assigns error on this judgment, and on certain rulings made during the trial.

1. At the time of the trial, the plaintiff had obtained a final

verdict and decree in the divorce and alimony case, and copies of the verdict and decree were admitted in evidence. The plaintiff tendered in evidence the petition, an amendment thereto, and the answer of the husband, in the divorce proceedings. The objections of the defendants to the admission of these documents were sustained, and error is assigned on this ruling. This ruling was not erroneous. The defendants in their answer admitted the allegations of the petition as to the filing and pendency of the divorce suit. There were no allegations in these pleadings which were admitted by the defendant Lewis that were relevant to the issues of fraudulent intent of the husband, or as to knowledge of Graham of the husband's intent at the time the deed was executed.

2. The sole question remaining is: Did the court err in granting a nonsuit? The petition stated a cause of action under Code § 28-201 (2), which provides that, where a conveyance of real estate is made with intention to delay or defraud creditors, and such intention is known to the grantee, such conveyance shall be null and void against creditors and others, but that a bona fide transaction on a valuable consideration, and without notice or ground for reasonable suspicion, shall be valid. The deed here involved having been executed while the husband and wife were living separate and apart, her claim for support of herself and children gave her the status of a creditor, and entitled her to bring an action to set the deed aside. *Stephens* v. *Stephens*, 168 *Ga.* 630 (148 S. E. 522); *McGahee* v. *McGahee*, 204 *Ga.* 91 (48 S. E. 2d 675). The question as to whether the deed was executed by the grantor with intention to delay or defraud his wife in the collection of alimony and such intention was known to the grantee, or whether the transaction was a bona fide one upon a valuable consideration and without notice or ground for reasonable suspicion, is ordinarily one for determination by a jury. *Lane* v. *Newton*, 145 *Ga.* 810 (89 S. E. 1083); *Fields* v. *Marchman*, 179 *Ga.* 613 (176 S. E. 635); *Blevins* v. *Pittman*, 189 *Ga.* 789 (6) (7 S. E. 2d 662).

The brief of evidence discloses the following facts: At the time of the separation on April 14, 1952, the husband left the wife and children in possession of the home place, the subject matter of the deed, which he at that time owned. A few days thereafter he employed Graham, an attorney at law, to repre-

sent him in any action for divorce by him or his wife, paying him $10 as a retainer. A fee of $500 was agreed on between the parties for services to be rendered by Graham in bringing a divorce action against the wife. The husband told Graham he had no money, and would have to pay him in property. They agreed that for a consideration of $1,200, $500 of which would represent payment of the divorce suit fee, and a purchase-money note of $700, and the assumption of a loan against the property, the husband would deed the home place to Graham. The deed was executed according to the terms of this agreement on May 28, 1952, and was recorded on the following day. The deed recites that the original principal amount of the loan note as of September 21, 1946, was $4,100, but there was no evidence as to the exact amount which was due on May 28, 1952. At the time the deed was executed, the husband told Graham that he had separated from his family, and that his wife and children were living in the property described in the deed. Graham did not go out and look at the property, and had never seen it, but valued the husband's equity on information given him by the husband. Graham testified that, at the time the deed was made, he knew that Lewis had a wife and two children, and that "As to the question of whether I, as a lawyer, am familiar with the liability of the husband to support his children, well, I don't know, we lawyers disagree on lots of things, I have my own ideas about it. As a lawyer, actively engaged in the practice, I do not know of any rule of law that exempts a husband from supporting his children, and as to any rule that exempts a husband from providing a home for his children to live in, no, I think it would include that too. I think the law in this State is that a man is under an obligation to reasonably support and maintain his wife and children during the time of coverture." The note for $700 was paid by Graham the day after it was executed, though not due until a year after its execution. Lewis testified that he told his wife on June 16, 1952, that he had sold the property. This was denied by the wife, who testified that the first knowledge she had that the property had been conveyed to Graham was on July 17, 1952. The effect of this conveyance was to leave the husband without any property in Walker County, and at the time of the trial he owned no real estate. The plaintiff

filed her action for divorce and alimony on June 17, 1952. The jury by its verdict on July 24, 1953, awarded the plaintiff all the household goods and kitchen furniture in the home place on the Hogan Road, and awarded the plaintiff and the children "the use and possession of said house on the Hogan Road until the plaintiff remarries. In the event the plaintiff remarries, then the children are granted the use, possession, and income from said house on the Hogan Road until the youngest child is eighteen (18) years of age or self-supporting." They also awarded the sum of $20 per month for the support of the wife and $45 per month to each child. It appeared without dispute that the father had paid all alimony accruing under the divorce decree up to the time of the trial of the instant case.

As to whether the husband executed the deed with the intention and purpose of delaying, hindering, or defeating the plaintiff in the collection of alimony for the support of herself and the children—under all the evidence and circumstances appearing in this case this issue was for determination by the jury and not the court.

As to whether the defendant Graham knew or had reasonable ground to suspect the alleged fraudulent intention of the husband—this issue likewise was one for the jury. The execution of the deed grew out of the confidential relationship of attorney and client. The fact that the conveyance was one from a client to his attorney does not of itself show that the transaction was fraudulent, but such transaction was subject to a more careful scrutiny than one between strangers. The existence of such relationship may be considered by the jury on the question of fraud and lack of good faith. See *Stubinger* v. *Frey,* 116 *Ga.* 396 (42 S. E. 713); Summers *v.* Taylor, 80 Ky. 429. Graham, as an attorney at law, knew that the husband was under a legal duty to support his wife and children, that a divorce action between the parties was imminent, and that, if the jury awarded alimony, they would have the right to award the home place or its possession as a part of the alimony for the support of the wife and children. He also knew that the wife and children had possession of the home place, but made no effort to ascertain from her what claim or right she might assert to the property. The actual possession of the home place by the wife and children was

sufficient to put Graham on inquiry as to the claim under which she held possession. .Code § 85-408; *Mercer* v. *Morgan,* 136 *Ga.* 632 (2) (71 S. E. 1075); *Yancey* v. *Montgomery,* 173 *Ga.* 178 (2) (159 S. E. 571); *Dyal* v. *McLean,* 188 *Ga.* 229 (1, 2) (3 S. E. 2d 571). Graham took the deed without making an examination of the premises or making an independent examination of the value of the husband's equity. All of these facts and circumstances were for the jury to consider on the question of whether he took with notice of the husband's intention, or whether they were sufficient to raise a reasonable suspicion in his mind as to the intention of the husband. Even though the deed was made upon a valuable consideration, if the jury believed that Graham had knowledge that it was made by the husband with intent to delay or defraud the wife's claim for alimony, or had reasonable ground to suspect it, they would be authorized to cancel the deed. *Conley* v. *Buck,* 100 *Ga.* 187 (28 S. E. 97); *Sullivan* v. *Ginsberg,* 180 *Ga.* 840 (1a) (181 S. E. 163); *Dickson* v. *Citizens Bank & Trust Co.,* 184 *Ga.* 398 (2) (191 S. E. 379).

It is contended that the evidence was without dispute that, at the time of the trial, all of the alimony instalments then due had been paid, and therefore the plaintiff was not in a position to ask for cancellation of the deed. If all the alimony awarded had been a sum of money to be paid in monthly instalments, the defendant's contention, under the ruling in *Wallace* v. *Wallace,* 189 *Ga.* 220 (5 S. E. 2d 580), would be meritorious; but the alimony awarded in the present case was not only money to be paid in monthly instalments, but included the award of possession of real property, the subject matter of the deed from the husband to Graham; and under the ruling in *Bowen* v. *Bowen,* 182 *Ga.* 299 (1) (185 S. E. 312), the deed would be subject to be set aside on petition of the mother to protect the interest. of herself and the children in the property awarded in the final decree. In that case it was held (at p. 301): "Where a married man by deed conveyed to another person certain described real estate, and such conveyance was made for the purpose of defeating creditors of the grantor, and this was known to the grantee, and the wife of the grantor subsequently brought divorce proceedings against him and obtained a decree of divorce and an award as permanent alimony, a part of the alimony being one

of the lots conveyed by the deed above referred to, the wife could maintain an equitable suit against the husband and the grantee in the deed, to have canceled and set aside the deed which conveyed the lot and the building thereon awarded to her as alimony; and there was no such privity between the husband and the wife as would prevent her bringing this suit." See also *Von Kamp* v. *Gary*, 204 *Ga.* 875 (52 S. E. 2d 591).

It follows from what has been said that the court erred in granting a nonsuit.

*Judgment reversed. All the Justices concur.*